1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                   EASTERN DISTRICT OF WASHINGTON
8
9   STACEY KUKES,                          No. 1:15-CV-3166-JTR
10
               Plaintiff,                  ORDER GRANTING
11                                         DEFENDANT'S MOTION FOR
               v.                          SUMMARY JUDGMENT
12
13  CAROLYN W. COLVIN,
14  Commissioner of Social Security,
15             Defendant.
16

17        **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

18  No. 14, 16.  Attorney Thomas Andrew Bothwell represents Stacey Kukes

19  (Plaintiff); Special Assistant United States Attorney Lars J. Nelson represents the

20  Commissioner of Social Security (Defendant).  The parties have consented to

21  proceed before a magistrate judge.  ECF No. 3.  After reviewing the administrative

22  record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for

23  Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

24                              **JURISDICTION**

25        On November 28, 2012, Plaintiff filed an application for Disability

26  Insurance Benefits (DIB), alleging disability since August 1, 2011, due to

27  back/neck problems, IBS, scoliosis, arthritis, depression, bone spurs and chronic

28  pain.  Tr. 165, 190.  At the administrative hearing, Plaintiff amended her alleged

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

onset date to November 19, 2012, her 50th birthday.  Tr. 34-35.  The application was denied initially and upon reconsideration.  Administrative Law Judge (ALJ) Tom L. Morris held a hearing on May 13, 2014, Tr. 32-55, and issued an unfavorable decision on June 25, 2014, Tr. 18-27.  The Appeals Council denied Plaintiff's request for review on August 24, 2015.  Tr. 1-3.  The ALJ's June 2014 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on September 15, 2015.  ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff is a high school graduate and was 50 years old on the amended alleged onset date, November 19, 2012.  Tr. 34.  Plaintiff testified at the administrative hearing she had performed no work in the two years prior to the hearing.  Tr. 36-37.  She was supported financially through her husband's social security, food stamps and state medical assistance.  Tr. 37-38.  Her past work consists of employment as a cashier, mail clerk, sales attendant, inventory clerk and child monitor.  Tr. 38-40.  Plaintiff testified she is unable to perform her past work because she is not able to stand for longer than 30 minutes at a time, her lower back and hips hurt constantly, and she can no longer twist and bend like she was once able.  Tr. 40-41.

Plaintiff stated her primary care physician, Dr. Kristin Larson, had referred her for physical therapy and for a cortisone shot.  Tr. 41-42.  She testified that she had not yet started the physical therapy, but had been administered a cortisone shot with no significant relief.  Tr. 42.

Plaintiff stated she spends a typical day sitting at her desk playing computer games and drinking coffee and sitting in her recliner watching television.  Tr. 43.

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

She indicated she spends a good part of her day in her recliner with her feet elevated to take pressure off of her lower back. Tr. 43-44. She watches television about 10 or 11 hours a day, plays on the computer, and reads romance books for about 30 minutes a day. Tr. 45-46.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a),

416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform.  *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On June 25, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 20.  At step two, the ALJ determined Plaintiff had the severe impairment of degenerative disc disease.  Tr. 20.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 22.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform a range of light exertion level work.  Tr. 22.  The ALJ found Plaintiff could lift up to 20 pounds occasionally and lift 10 pounds frequently; could stand and/or walk about six hours and sit up to six hours in an eight-hour day with normal breaks; could frequently balance, kneel, crouch and climb ramps and stairs; could occasionally stoop, crawl, and climb ladders, ropes or scaffolds; must avoid concentrated exposure to extreme cold and vibration; and

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

would need to be able to periodically alternate siting and standing, but this could be accomplished with normal breaks and lunch.  Tr. 22.

At step four, the ALJ found Plaintiff was able to perform her past relevant work as a Cashier II, Sales Clerk and Mail Clerk.  Tr. 26.  Alternatively, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including occupations such as Production Assembler, Housekeeper, and Hand Packager.  Tr. 26-27.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from August 1, 2011, the initial alleged onset date, through the date of the ALJ's decision, June 25, 2014.  Tr. 27.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in assessing Plaintiff's physical condition by (1) improperly rejecting the opinions of William Drenguis, M.D., and Kristin Larson, M.D., and instead relying on the state agency opinion of Olegario Ignacio, Jr., M.D.; and (2) improperly rejecting Plaintiff's subjective complaints.  ECF No. 14 at 7-14.

## DISCUSSION

### A.    Plaintiff's Credibility

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 14 at 11-14.  Defendant responds that the ALJ provided valid reasons for discounting Plaintiff's subjective complaints.  ECF No. 15 at 14-17.

It is the province of the ALJ to make credibility determinations.  *Andrews*, 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific

cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible for various reasons. Tr. 23-25.

Within the section of the ALJ's determination pertaining to Plaintiff's credibility, the ALJ noted Plaintiff refused to follow through with treatment recommendations by failing to quit smoking. Tr. 24-25. The Court finds that a claimant's failure to comply with a diagnosis to quit smoking is an unreliable basis on which to rest a credibility determination. *See Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000) ("Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health."). Even though Plaintiff's smoking may have contributed to her symptoms, the fact that she did not quit as recommended by her doctors does not necessarily undermine her credibility. Plaintiff's failure to quit smoking is not a clear and convincing reason for discounting her credibility.

The ALJ also stated that Plaintiff's activities throughout the relevant period were inconsistent with her allegations of severely limiting symptoms. Tr. 24. It is

well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, while the ALJ indicated Plaintiff's allegations of disability were inconsistent with her testimony that she can go to the grocery store, is able to drive herself around, plays computer games, reads novels for 30 minutes at a time, and watches over 10 hours of television a day, Tr. 24, there is no explicit evidence or report of how Plaintiff specifically spends this time. *See Fair*, 885 F.2d at 603 (one does not need to be "utterly incapacitated" to be disabled); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). It was not proper for the ALJ to find Plaintiff's level of activity in this case was inconsistent with her subjective complaints.

Nevertheless, given the ALJ's other reasons for finding Plaintiff less than fully credible, as indicated below, the Court finds these two errors harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

With respect to Plaintiff's credibility, the ALJ found that the minimal and mild physical examination findings throughout the record were inconsistent with Plaintiff's allegations of severely limiting pain. Tr. 23. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d

676, 681 (9th Cir. 2005); *see also Carmickle*, 533 F.3d at 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").

As indicated by the ALJ, although Plaintiff's treating physician Dr. Larson noted in August 2011 that Plaintiff demonstrated some tenderness and alleged pain with range of motion on physical examination, Plaintiff also presented as pleasant and in no acute distress. Tr. 23, 246. During her March 1, 2013, consultative examination with Dr. Drenguis, it was noted Plaintiff was able to take her shoes off and put them on without assistance despite asserting this was the most difficult thing for her to do. Tr. 23, 268. Dr. Drenguis indicated Plaintiff had some loss in her spinal range of motion, but normal range of motion in her hips and extremities and positive straight leg raise testing, but without radiation into either leg or muscle spasms in her back. Tr. 23, 269-270. Dr. Drenguis further indicated Plaintiff had 5/5 muscle strength in all extremities, intact sensation, and equal reflexes. Tr. 23-24, 270. The ALJ also mentioned that in April and May 2014, Michael S. Mullin, D.O., an examining spinal specialist, indicated Plaintiff had full range of motion in her musculoskeletal system; normal gait, station and balance; no atrophy; 5/5 strength; intact sensation; equal reflexes; and normal coordination. Tr. 24, 298. In assessing Plaintiff's credibility, the ALJ properly noted the inconsistencies between Plaintiff's alleged limitations and the relatively mild physical examination findings throughout the record.

The ALJ also held that the conservative treatment Plaintiff received was inconsistent with her allegations of severely limiting back pain. Tr. 24. Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th ///

Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative treatment suggests a lower level of both pain and functional limitation).

As noted by the ALJ, Plaintiff's treatment generally consisted of muscle relaxers, ibuprofen, some injections, and physical therapy.  Tr. 24.  These methods of treatment are considered conservative.  *See Parra*, 481 F.3d at 751 (finding over-the-counter medication is conservative treatment); *Drewer v. Colvin*, 2014 WL 5850549 at *5 (E.D. Wash. 2014) (holding that the use of muscle relaxers for the treatment of pain is conservative treatment); *Gallo v. Comm'r of Soc. Sec. Admin.*, 2010 WL 545848 at *14 (N.D. Cal. 2010) aff'd, 449 F. App'x 648 (9th Cir. 2011) (defining an epidural steroid injection as conservative treatment); *Tommasetti*, 533 F.3d at 1040 (describing "physical therapy" as conservative treatment); *Morris v. Colvin*, 2014 WL 2547599 at *4 (C.D. Cal. 2014) (finding the ALJ properly discounted credibility when plaintiff received conservative treatment consisting of physical therapy, use of TENS unit, chiropractic treatment, Vicodin, and Tylenol with Vicodin).  The ALJ's determination that Plaintiff's conservative treatment was inconsistent with the claimed severity of her pain is supported by substantial evidence and provides another clear and convincing reason for discounting Plaintiff's testimony.

The ALJ also indicated Plaintiff's inconsistent reporting as detracting from her credibility.  Tr. 24.  Inconsistencies in a disability claimant's reporting supports a decision by the ALJ that a claimant lacks credibility with respect to her claim of disabling pain.  *See Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986).

The ALJ noted that Plaintiff informed Dr. Larson in March 2014 that she had tried physical therapy and did not want to try it again.  Tr. 24, 278.  However, in May 2014, she told Dr. Mullin she had good relief with physical therapy, Tr. 297, and later agreed to pursue physical therapy, Tr. 301.  Tr. 24.  The ALJ additionally indicated Plaintiff reported to DSHS that if she lifted anything heavier than a gallon of milk, she would "have a migraine for days after."  Tr. 24, 253.

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

Yet, her treatment notes only include complaints of neck and back pain, with no report of migraine headaches. Tr. 24. There is no indication Plaintiff sought treatment for migraine headaches. Tr. 24. Furthermore, although she did complain of general headaches on at least one occasion, Tr. 245, there is no mention of a link between these headaches and lifting. Tr. 24. The forgoing inconsistencies noted by the ALJ are legitimate reasons to discount Plaintiff's credibility.

The ALJ also indicated evidence suggested Plaintiff's primary motivation for seeking medical treatment was to obtain benefits. Tr. 24. The Ninth Circuit has recognized that the ALJ may consider the issue of secondary gain in rejecting symptom testimony. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998); *Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (allowing an ALJ to judge credibility based on a strong element of secondary gain); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (the ALJ may properly consider the issue of motivation in assessing credibility).

The ALJ noted that when Plaintiff sought an examination from Dr. Mullin in April 2014, Plaintiff specifically informed Dr. Mullin she was looking for "proof" that she could not work as she was applying for disability. Tr. 298. The ALJ stated that this evidence suggested Plaintiff's primary motivation for the consultation was related to obtaining benefits versus obtaining treatment, implying her condition was not as severe as she alleged. Tr. 24. This was yet another permissible basis for the ALJ to find Plaintiff less than fully credible in this case.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

reviewing the record, the Court finds that the ALJ provided several valid reasons for discounting Plaintiff's subjective complaints that are clear, convincing, and fully supported by the record. Accordingly, the ALJ did not err by finding Plaintiff's subjective complaints were not entirely credible in this case.

**B.    Medical Source Opinions**

Plaintiff argues the ALJ erred by according "significant weight" to the state agency medical consultant, Dr. Ignacio, and by failing to accord proper weight to the opinions of Drs. Larson and Drenguis. ECF No. 14 at 7-11. Defendant responds that the ALJ properly weighed the medical evidence of record in this case. ECF No. 16 at 9-14.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

The ALJ found that although Plaintiff had severe degenerative disc disease, the objective medical evidence did not support the degree of limitation alleged by Plaintiff. Instead, the ALJ determined Plaintiff retained the RFC to perform a range of light exertion level work, which included the ability to stand and/or walk

and sit about six hours in an eight-hour workday with normal breaks.  Tr. 22.  The Court finds the ALJ's interpretation of the medical record is supported by substantial evidence.  *See infra*.

### 1.      Olegario Ignacio, Jr., M.D.

Plaintiff contends the ALJ erred by finding the opinion of state agency nonexamining physician Dr. Ignacio persuasive in this case.  ECF No. 14 at 11.

The opinions of nonexamining doctors are generally entitled to less weight than doctors who treat or examine a claimant.  *Benecke*, 379 F.3d at 592; *Lester*, 81 F.3d at 830.  The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 830.  However, an ALJ's decision to reject the opinion of a treating or examining physician, may be based in part on the testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d at 751-755; *Andrews*, 53 F.3d at 1043.  The ALJ must also provide other evidence to support her decision, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-752; *Andrews*, 53 F.3d 1042-1043.

The ALJ accorded "significant" weight to Dr. Ignacio's opinions because they were consistent with the minimal findings on physical exam of Plaintiff and the record as a whole.  Tr. 25.  Substantial evidence supports the ALJ's decision in this regard.  *See infra.*

On April 25, 2013, Dr. Ignacio reviewed the record and opined Plaintiff could perform light exertion level work and could stand and/or walk about six hours and sit more than six hours per workday.  Tr. 25, 73.  Dr. Ignacio noted the conservative treatment history of Plaintiff and reported he reviewed imaging findings involving both the cervical and L/S spines.  Tr. 74.  Old imaging of Plaintiff's back and neck revealed some scoliosis and only mild degenerative

changes of her lumbar spine.  Tr. 20, 243.  Objective imaging from March 2013 revealed moderate degenerative changes in the cervical spine and mild to moderate degenerative changes in her lumbar spine.  Tr. 20, 270; *see Johnson*, 60 F.3d at 1434 (finding that imaging did not support the degree of functional limitation alleged).  As discussed in Section A, conservative treatment followed.

Dr. Ignacio also reviewed Dr. Drenguis' consultative examination.  Tr. 74. Dr. Ignacio found Dr. Drenguis' physical examination findings "very reassuring," given the normal gait, station and coordination, 5/5 muscle strength, normal deep tendon reflexes and intact sensory findings.  Tr. 74, 269-270.  These examination findings by Dr. Drenguis are consistent with the 2014 findings of examining spinal specialist Dr. Mullin.  As noted by the ALJ, Dr. Mullin found that Plaintiff had full range of motion in her musculoskeletal system; normal gain, station and balance; no atrophy; 5/5 strength; intact sensation; equal reflexes; and normal coordination and observed Plaintiff was in no acute distress.  Tr. 24, 297-301.

Based on the foregoing, Dr. Ignacio's opinion is supported by substantial evidence, including the objective imaging of record, Plaintiff's conservative treatment history, and the minimal physical examination findings of record.  Thus, the ALJ did not err by according significant weight to Dr. Ignacio's opinions.

## 2.    Kristin Larson, M.D.

Plaintiff contends the ALJ erred by failing to accord proper weight to the opinion of her treating physician, Kristin Larson, M.D., that Plaintiff was incapable of full time employment.  ECF No. 14 at 7-9.

On March 27, 2014, Dr. Larson filled out a "Medical Questionnaire" form provided by Plaintiff's attorney.  Tr. 284.  Dr. Larson checked a box on the form which stated "I do not believe that this patient is capable of performing any type of work on a reasonably continuous, sustained basis."  *Id*.  The Medical Questionnaire check-box form is devoid of any vocational details or any information regarding ///

Plaintiff's medical condition.[1]  In an area on the form which permitted comments by the doctor, Dr. Larson merely indicated "no treatment yet."  Tr. 284.  Dr. Larson does not include an explanation or basis for her check-box conclusion on the Medical Questionnaire form.

The ALJ provided two reasons for finding Dr. Larson's opinion on the check-box form little weight:  (1) Dr. Larson did not provide significant support or a basis for the opinion, which is inconsistent with the minimal examination findings and conservative treatment offered to Plaintiff; and (2) an opinion regarding disability is one that is reserved for the commissioner.  Tr. 25.

It is the role of the ALJ to determine whether a claimant is "disabled" within the meaning of the Social Security Act, and that determination is based on both medical and vocational components.  *Edlund v. Massanari*, 253 F.3d 1152, 1156-1157 (9th Cir. 2001).  The check-box form does not include any vocational information pertaining to Plaintiff, and, perhaps more significant, it fails to provide any specific information regarding Plaintiff's medical condition.  In any event, it is the responsibility of the ALJ, not a physician, to make an ultimate determination of disability in a Social Security case.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (a determination regarding whether a claimant can perform work is for the Social Security Administration to make, not a physician); *see also* 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").  The ALJ did not err by stating that disability determinations are reserved for the Commissioner.

---

[1]A check-box form is entitled to little weight.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible).

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

Moreover, an ALJ may discredit physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, *Matney*, 981 F.2d at 1019, or by objective medical findings, *Tonapetyan*, 242 F.3d at 1149. As indicated above, the check-box form completed by Dr. Larson does not contain any information regarding Plaintiff's medical condition or an explanation or basis for the opinion. Tr. 284. Consequently, as determined by the ALJ, Dr. Larson's opinion on the check-box form is unsupported. *Tonapetyan*, 242 F.3d at 1149 (an ALJ may discredit a treating physician's opinion that is unsupported by rationale or treatment notes and offers no objective medical findings to support the existence of alleged conditions).

The reasons provided by the ALJ for according little weight to Dr. Larson's opinion on the check-box form are clear and convincing and supported by substantial evidence. *Lester*, 81 F.3d at 830.

### 3.   William Drenguis, M.D.

Plaintiff argues the ALJ also erred by rejecting the March 2013 examining opinion of Dr. Drenguis, which limited Plaintiff to no more than four hours of sitting, standing and walking in an eight-hour day. ECF No. 14 at 9-11; Tr. 271.

The ALJ accorded some weight to the opinion of Dr. Drenguis, but gave little weight to the limitations he assessed on sitting, standing and walking because the limitations were inconsistent with the minimal and mild objective physical examination findings. Tr. 25.

As noted by the ALJ, Dr. Drenguis' examination findings include normal range of motion in her hips and extremities, positive straight leg raise testing without radiation into either leg or muscle spasm in her back, 5/5 muscle strength in all extremities, intact sensation, and equal reflexes. Tr. 23-24, 269-270. Dr. Drenguis also noted Plaintiff was able to take her shoes off and put them on without assistance, despite alleging this was her "hardest thing to do." Tr. 23, 268. Furthermore, the ALJ noted examining spinal specialist Dr. Mullin found that

1    Plaintiff had full range of motion in her musculoskeletal system; normal gait,

2    station and balance; no atrophy; 5/5 strength; intact sensation; equal reflexes; and

3    normal coordination.  Tr. 24, 298.  As determined by the ALJ, these physical

4    examination findings conflict with a conclusion that Plaintiff is limited to

5    standing/walking and sitting only four hours in an eight-hour workday.  Tr. 25; *see*

6    *Mayes v. Massanari*, 276 F.3d 453, 458 (9th Cir. 2001) ("The findings of the

7    Secretary as to any fact, if supported by substantial evidence, shall be

8    conclusive."); *Matney*, 981 F.2d at 1019 ("When there is conflicting medical

9    evidence, the Secretary must determine credibility and resolve the conflict.").  It is

10   the responsibility of the ALJ to determine credibility, resolve conflicts in medical

11   testimony and resolve ambiguities, *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

12   1996), and this Court may not substitute its own judgment for that of the ALJ, 42

13   U.S.C. § 405(g).  Where, as here, the ALJ has made specific findings justifying a

14   decision, and those findings are supported by substantial evidence in the record,

15   this Court's role is not to second-guess that decision.  *Fair*, 885 F.2d at 604.

16          The ALJ properly weighed the evidence and concluded the weight of the

17   record evidence supported an RFC determination that Plaintiff retained the ability

18   to stand and/or walk and sit about six hours in an eight-hour workday with normal

19   breaks.  Tr. 22.  The ALJ's interpretation of the medical record is fully supported

20   by the evidence of record.

21          Based on the foregoing, the Court finds the ALJ did not err in his assessment

22   of the medical evidence.  The ALJ did not err by according significant weight to

23   Dr. Ignacio, little weight to the check-box form opinion by Dr. Larson that Plaintiff

24   was unable to work, and little weight to the limitations on sitting, standing and

25   walking identified by Dr. Drenguis.  The ALJ's RFC determination is supported by

26   substantial evidence and free of legal error.

27   ///

28   ///

1   **CONCLUSION**

2       Having reviewed the record and the ALJ's findings, the Court finds the

3   ALJ's decision is supported by substantial evidence and free of legal error.

4   Accordingly, **IT IS ORDERED:**

5       1.      Defendant's Motion for Summary Judgment, **ECF No. 16**, is

6   **GRANTED**.

7       2.      Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

8       The District Court Executive is directed to file this Order and provide a copy

9   to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant

10  and the file shall be **CLOSED**.

11      DATED May 6, 2016.

12

13                  _____

14                                      JOHN T. RODGERS
                                        UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION . . . - 17